UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PROMOTE INNOVATION LLC | ) | |
| | ) | Case No. 2:10-cv-235-TJW |
| Plaintiff | ) | |
| | ) | AMENDED COMPLAINT FOR |
| v. | ) | FALSE PATENT MARKING |
| | ) | |
| LEVITON MANUFACTURING CO., INC. | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

Plaintiff PROMOTE INNOVATION LLC alleges as follows:

## NATURE OF THE CASE

1. This is an action for false patent marking under Section 292 of the Patent Act (35 U.S.C. § 292), which provides that any person may sue to recover the civil penalty for false patent marking. Plaintiff Promote Innovation brings this *qui tam* action on behalf of the United States of America.

## PARTIES

2. Plaintiff PROMOTE INNOVATION LLC is a Texas limited liability company with a principal place of business in Houston, Texas.

3. Defendant LEVITON MANUFACTURING CO., INC. is a Delaware corporation.

## JURISDICTION AND VENUE

4. The Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a).

5. The Court has personal jurisdiction over defendant. Defendant conducts business within the State of Texas. Defendant offers for sale, sells, marks, and/or advertises the

products that are the subject of this complaint in the United States, the State of Texas, and the Eastern District of Texas.

6. Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c), and 1395(a).

## FACTS

7. On August 20, 1999, Leviton filed an application for a patent that ultimately issued as U.S. Patent No. 6,246,588 (the "588 patent").

8. The 588 patent claimed patent protection only for isolated conductors used in connection with reset lockout.

9. Leviton desired patent protection for isolated conductors whether or not they are used in connection with reset lockout.

10. On April 19, 2004, Leviton filed another application that resulted in the issuance of U.S. Patent No. 6,864,766 on March 8, 2005.

11. Leviton filed the application that led to the 766 patent with the goal of claiming isolated conductors separate from reset lockout.

12. Leviton also filed another patent application six months earlier (the "Germain application").

13. Leviton included claims in the 766 patent that were nearly identical to the claims it had previously filed in the Germain application.

14. The Germain application and the 766 patent application had no common inventors.

15. During prosecution of the application for the 766 patent, Leviton did not inform the Patent Office about the co-pending Germain application with identical or nearly identical claims.

16.     During prosecution of the application for the 766 patent, Leviton also failed to make disclosures about relevant litigations and other matters to the Patent Office.

17.     On March 31, 2005, Leviton sued Universal Security Instruments, Inc., and USI Electric, Inc. ("USI") and Shanghai Meihao Electric, Inc. ("Meihao") for infringement of the 766 patent.

18.     Leviton brought its infringement suit with the knowledge that the 766 patent was unenforceable due to its inequitable conduct.

19.     On May 5, 2005, Shanghai Meihao Electric, Inc. ("Meihao") sought a declaratory judgment that the 766 patent is unenforceable because of inequitable conduct committed during the application for it.

20.     In 2007, Meihao discontinued manufacturing the product that Leviton accused of infringing the 766 patent.

21.     Leviton pursued litigation that it knew, or should have known, was baseless, particularly in view of the inequitable conduct that was the subject of Meihao's unenforceability defense.

22.     On November 28, 2007, just as Magistrate Judge Susan K. Gauvey was prepared to issue a comprehensive opinion rejecting Leviton's motion for a protective order and requiring Leviton to produce documentary and testimonial evidence regarding its inequitable conduct, Leviton sought leave to dismiss voluntarily all its claims.

23.     On December 17, 2007, the court issued an order granting Leviton's motion to dismiss its entire case with prejudice, but granted leave to Meihao to file an application for attorneys' fees.

24.     On December 23, 2008, Magistrate Judge Gauvey issued a report and recommendation determining that the 766 patent was unenforceable for inequitable conduct.

25.     Judge Gauvey concluded that the facts and circumstances indicated an intentional, deliberate deception of the PTO.

26.     Judge Gauvey concluded that Leviton had a strong motive to deceive the PTO.

27.     Judge Gauvey concluded that there was no evidence of countervailing good faith in Leviton's dealings with the PTO.

28.     Judge Gauvey concluded that Leviton's attorneys had played fast and loose with the governing law, ignoring their overarching duty of candor and disclosure in complying with the governing statutes, regulations and manual provisions.

29.     Judge Gauvey concluded that Leviton brought its lawsuit against USI and Meihao based on a patent received without full disclosure to the Patent Office, that Leviton engaged in a strategy of vexations litigation aimed at thwarting discovery of its inequitable conduct, and that Leviton finally chose to dismiss its case before any adverse rulings.

30.     On May 12, 2009, District Judge Andre Davis adopted the report and recommendation of Magistrate Judge Gauvey in virtually all respects.

31.     Judge Davis concluded that Leviton acted with the specific intent to deceive the PTO in prosecuting the 766 patent.

32. Leviton knew of the report and recommendation of Magistrate Judge Gauvey and its adoption by District Judge Davis on or about December 23, 2008 and May 12, 2009, respectively.

33. On September 22, 2009, Leviton sued its past lawyers for malpractice and breach of fiduciary duty based, in part, on its lawyers' alleged malpractice during the prosecution of the 766 patent.

34. Leviton alleged in its malpractice suit that its past lawyers committed malpractice and breached their fiduciary duty to Leviton because they did not disclose to the Patent Office the co-pending Germain application with nearly identical claims to the 766 patent application and they did not make disclosures about relevant litigations and other matters.

35. On May 28, 2010, the Court of Appeals for the Federal Circuit vacated Judge Davis's decision because it concluded that Leviton is entitled to a bench trial on inequitable conduct, and that the lower court erred by finding inequitable conduct on summary judgment.

36. Defendant has marked and/or continues to mark its products, including at least its ground fault circuit interrupter products (the Falsely Marked Products), with unenforceable or otherwise inapplicable products, including at least the 766 patent (the Falsely Marked Patents).

37. It was a false statement for defendant to mark the Falsely Marked Products with unenforceable or otherwise inapplicable patents.

38. Defendant is a large, sophisticated company.

39. Defendant has, and/or regularly retains, sophisticated legal counsel.

40. Defendant has many years of experience applying for patents, obtaining patents, licensing patents, and/or litigating in patent infringement lawsuits. Defendant's patents, including the Falsely Marked Patents, were prosecuted by sophisticated legal counsel.

41. Defendant knew that a patent that is uneforceable does not cover any product.

42. Defendant knew that it was a false statement to mark the Falsely Marked Products with an unenforceable or otherwise inapplicable patent.

## INJURY IN FACT TO THE UNITED STATES

43. Defendant's false marking injured the United States.

44. Defendant's false marking caused injuries to the sovereignty of the United States arising from defendant's violations of federal law, specifically, defendant's violation of 35 U.S.C. § 292(a).

45. Defendant's false marking caused proprietary injuries to the United States.

46. The marking and false marking statutes exist to give the public notice of patent rights. Congress intended the public to rely on marking as a ready means of discerning the status of intellectual property embodied in an article of manufacture or design, such as the Falsely Marked Products.

47. Federal patent policy recognizes an important public interest in permitting full and free competition in the use of ideas which are, in reality, a part of the public domain—such as those described in the Falsely Marked Patents.

48. Congress's interest in preventing false marking was so great that it enacted a statute which sought to encourage private parties to enforce the statute. By permitting

members of the public to bring *qui tam* suits on behalf of the government, Congress authorized private persons like Promote Innovation to help control false marking.

49. Defendant's acts of false marking deter innovation and stifle competition in the marketplace for at least the following reasons: if an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market; false marks may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement; and false marking can cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.

50. Defendant's false marking misleads the public into believing that the Falsely Marked Patents give defendant control of the Falsely Marked Products (as well as like products), and places the risk of determining whether the Falsely Marked Products are controlled by such patents on the public rather than on defendant, thereby increasing the cost to the public of ascertaining whether defendant in fact controls the intellectual property embodied in the Falsely Marked Products.

51. Thus, in each instance where defendant represented that the Falsely Marked Products are protected by the Falsely Marked Patents, a member of the public desiring to participate in the market for products like the Falsely Marked Products must incur the cost of determining whether the involved patents are valid and enforceable. Failure to take on the costs of a reasonably competent search for information necessary to interpret each patent, investigation into prior art and other information bearing on the quality of

the patents, and analysis thereof can result in a finding of willful infringement, which may treble the damages an infringer would otherwise have to pay.

52.     Defendant's false markings also creates a misleading impression that the Falsely Marked Products are technologically superior to previously available products, as articles bearing the term "patent" may be presumed to be novel, useful, and innovative.

53.     Every person or company in the United States is a potential entrepreneur with respect to the process, machine, manufacture, or composition of matters described in the Falsely Marked Patents.  Moreover, every person or company in the United States is a potential competitor of defendants with respect to the Falsely Marked Products marked with the Falsely Marked Patents.

54.     Each Falsely Marked Product or advertisement thereof, because it is marked with or displays the Falsely Marked Patents without identifying them as unenforceable or otherwise inapplicable, is likely to, or at least has the potential to, discourage or deter each person or company (itself or by its representatives) which views such marking from commercializing a competing product, even though the Falsely Marked Patents do nothing to prevent any person or company in the United States from competing with defendant in commercializing such products.

55.     Defendant's marking of the Falsely Marked Products with unenforceable or otherwise inapplicable patents and/or advertising thereof has quelled competition with respect to similar products to an immeasurable extent, thereby causing harm to the United States in an amount that cannot be readily determined.

56. Defendant has wrongfully and illegally advertised a patent monopoly that it does not possess and, as a result, have benefited by increasing, or at least maintaining, their market power or commercial success with respect to the Falsely Marked Products.

57. Each individual false marking (including each time an advertisement with such marking is accessed on the internet), is likely to harm, or at least potentially harms, the public. Thus, each such false marking is a separate offense under 35 U.S.C. § 292(a).

58. Each offense of false marking creates a proprietary interest of the United States in the penalty that may be recovered under 35 U.S.C. § 292(b).

59. For at least the reasons stated in paragraphs 7 to 58 above, defendant's false marking caused injuries to the sovereignty of the United States arising from defendant's violations of federal law, and caused proprietary injuries to the United States.

## CLAIM

60. For the reasons stated in paragraphs 7 to 59 above, defendant has violated section 292 of the Patent Act by falsely marking its products with intent to deceive the public.

## PRAYER FOR RELIEF

Plaintiff thus requests this Court, pursuant to 35 U.S.C. § 292 to do the following:

A. Enter judgment against defendant and in favor of plaintiff for the violations alleged in this complaint;

B. Order defendant to pay a civil monetary fine of $500 per false marking offense, or an alternative amount determined by the Court, one-half of which shall be paid to the United States; and

C. Grant plaintiff such other and further relief as it may deem just and equitable.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated: August 9, 2010

Respectfully submitted,

/s/  Matthew J. Antonelli
Zachariah S. Harrington (lead attorney)
Texas Bar No. 24057886
zac@ahtlawfirm.com
Matthew J. Antonelli
matt@ahtlawfirm.com
Texas Bar No. 24068432
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
ANTONELLI, HARRINGTON &
THOMPSON LLP
4200 Montrose Blvd, Suite 430
Houston, TX 77006
(713) 581-3000

Attorneys for
PROMOTE INNOVATION LLC

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 9th day of August, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                              /s/ Matthew J. Antonelli
                                             Matthew J. Antonelli